[No. 1504.]

## The Colorado Mortgage and Investment Co. v. Messemer.

1. FEES—CONSTABLES—EXECUTING WRIT.

For executing a writ of restitution, in a case where there is no money to collect, in a county of the first class, a constable's fees cannot exceed $6.00 as that is the limit of the total fees, exclusive of commissions on money collected in any civil action in such county.    The tearing down and removal of houses in the execution of a writ of restitution is no part of the official duties of a constable, and to collect compensation for such service from the plaintiff in the writ the constable must show a contract of employment for that purpose.

2. INSTRUCTIONS.

An instruction which assumes that evidence was given which was not, or which misstates the evidence that was given is misleading to the jury and is fatally erroneous.

*Appeal from the County Court of Arapahoe County.*

Messrs. RIDDELL & STARKWEATHER, for appellant.

Mr. ISHAM R. HOWZE, for appellee.

THOMSON, P. J.

This suit was commenced in a justice's court, went thence to the county court, and now comes to this court by appeal.

The evidence disclosed the following facts: Otto Lee was a squatter on land belonging to the appellant, and the latter recovered a judgment against him, before a justice of the peace, for its possession, in an action of unlawful detainer. A writ of restitution was issued on the judgment, and delivered to the appellee as special constable. The latter moved the building, in which Lee and his family were living, off the land, to a distance of about half a mile from where it had stood, and tore down, and carried away, eleven other houses on the land. He then presented to the appellant a bill for the work, amounting to $89.25, payment of which was refused, and he brought this suit for its recovery. There was judgment in his favor for $84.50.

The statute limits the sum total of a constable's fees, in any civil action, in counties of the first class, to $6.00, exclusive of commissions on moneys collected. Session Laws, 1891, p. 219. Arapahoe county, in which the judgment was recovered, and the writ was to be executed, was a county of the first class. Therefore, for the plaintiff's services in the case as an officer, there being no money to collect, his fees could not exceed $6.00. But the service and execution of the writ of restitution did not require the removal or tearing down of buildings, and the performance of work of that kind was no part of the duty of the plaintiff as constable. Whatever he did beyond taking, and delivering to the company, the possession of the land, was done, not in an official, but in a private, capacity, and to enable him to recover for the work, he must show an employment for the purpose. This he undertook to do. He testified to a conversation with Edward L. Dixon, the company's attorney in the unlawful detainer suit, and to conversations with Mr. Morris and Mr. Gilmore, who appear to have been representatives of the company, and from those conversations he inferred his authority to do what he did.

The court stated to the jury that the plaintiff alleged that he made a contract with the officers and agents of the defendant, by the terms of which he was to move from the premises

all of the buildings, including the coal house, outhouse and dugouts, then upon the premises, and instructed them that if they believed from the evidence that the plaintiff was employed by one of the agents of the defendant to remove the buildings, and that he had performed such service, they should find for the plaintiff in such sum as his services were reasonably worth. There were no written pleadings, and there is no place, outside of the plaintiff's testimony at the trial, to find what he alleged. The statement of the court therefore amounted to a statement of what the plaintiff had testified to, and on the assumption that there was evidence of an employment of the defendant by the plaintiff's agent or agents to remove the buildings, the court submitted the question of such employment to the jury. An assumption in instructions that evidence was given which was not given, is improper, because its necessary tendency is to mislead the jury. *Fisk v. Electric Light Co.*, 3 Colo. App. 319. Much more so is a direct misstatement of the evidence. If there was no evidence of any such contract of employment as that stated to the jury, or assumed by the instruction, the instruction was fatally erroneous. We will therefore look into the evidence to see what it was.

The plaintiff testified that when he received the writ of restitution, Mr. Dixon told him that the company had had a great deal of trouble with those people on the land, had been trying to get them off about three years, and wanted them off; that it wanted them moved, and wanted possession of the land no matter what the cost might be. In one portion of his testimony the witness undertook to give the exact words used by Mr. Dixon. They were as follows:

" We have had a great deal of trouble with this man, and we want to get him off the premises ; we want to get his furniture off, we want to get his stuff off, we want to get possession of the land." Mr. Dixon testified that he never instructed the plaintiff to remove any building, that he suggested that the dwelling had better be torn down, but that the plaintiff had better call on Mr. Morris before executing

the writ. He also said that he was not aware that there was any other building on the land. The only authority in the premises which the plaintiff had from Mr. Dixon was derived from that one conversation. He was authorized by the writ to eject Lee from the premises, and remove his belongings from the dwelling he occupied; but nothing stated to him by Dixon can be construed into an employment to tear down and remove the other eleven buildings. Neither was any employment by Morris or Gilmore to tear down the buildings shown. The plaintiff's testimony on that subject was that, feeling some sympathy for Mrs. Lee, he went to Morris and Gilmore and asked permission to remove the dwelling instead of tearing it down; that Gilmore inquired what the additional cost of removing it would be, and he replied $8.00 or $10.00; that he then asked Gilmore where he should put the building, and Gilmore designated a spot about one hundred feet from where he stood; whereupon he suggested that the owner of that ground might not permit him to leave it there, and Gilmore said, "Burn it up if you want to." The witness further said that the owner of the ground one hundred feet off, objected to the building being placed there, and he then took it to a distance of half a mile and left it. So far as appears, nothing whatever was said of any disposition to be made of the other buildings. In respect to the dwelling, Gilmore testified that the agreed price between him and the plaintiff for its removal was exactly $8.00, and the plaintiff, when questioned on the subject, declined to say that the fact was not in accordance with Gilmore's statement. According to the plaintiff's own testimony, he not only had no authority from the defendant to tear down the eleven other buildings, but he had none for removing the house to the place where he took it, and according to the undenied statement of Gilmore, he was to receive only $8.00 for its removal, if he should remove it at all. We should say from the plaintiff's testimony, and the undisputed portions of the testimony given for the defendant, that the plaintiff was entitled to judgment for the $8.00 together

with his legal fees for executing the writ, not exceeding $6.00. Before the trial in the justice's court, the defendant tendered him $14.00, and kept the tender good in the county court. In reality there was no question for the jury to pass upon, and the court should have directed a verdict in the plaintiff's favor for $14.00, and rendered judgment for that sum with the costs which had accrued before the trial in the justice's court. But the defendant did not ask the court to direct a verdict, and so far as the instruction mentioned was concerned, contented itself with an objection. The objection was well taken. The instruction was grossly erroneous, and the judgment is reversed.

*Reversed.*