No. 15,921.

Hillman *v.* Chmelka.
(195 P. [2d] 945)

Decided July 12, 1948.

Messrs. APPLE & WEST, for plaintiff in error.

Mr. HERBERT E. MANN, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

L. J. CHMELKA, defendant in error, to whom we hereinafter refer as plaintiff, brought an action against A. R. Hillman, a constable, as defendant, plaintiff in error here, to recover judgment under the provisions of section 186, chapter 48, '35 C.S.A., in the amount of $171.15, being treble the amount of alleged illegal fees collected by defendant. Judgment was entered in favor of plaintiff, to review which, defendant has sued out a writ of error.

In an unlawful detainer action instituted in a justice of the peace court March 8, 1946, Willard, the landlord, sought to recover possession of the leased premises from his tenant Chmelka, who had subleased a portion thereof to one Doran and his wife, alleging that plaintiff and the Dorans remained ·in possession after the expiration of the lease. Plaintiff had moved from the leased premises some months prior to the commencement of the action, but the Dorans remained in possession thereof. Presumably judgment was entered in favor of Willard and against plaintiff and the Dorans. Thereafter, on March 11, 1946, a writ of restitution was issued by the justice of the peace and sent to defendant for service upon plaintiff and the Dorans, which service was made by defendant on March 18, 1946. The distance from defendant's residence to that of plaintiff was approximately eight miles and to that of the Dorans about two and one-half miles further. March 21, 1946, defendant sent by registered mail to plaintiff a statement of costs incurred in connection with the writ of restitution, asserting that plaintiff had agreed to pay him whatever costs

he incurred in connection therewith. The statement of costs is as follows:

"STATE OF COLORADO ) IN THE JUSTICE COURT
 ) ss OF
 County of Weld ) D. F. Matheson, J. P.

LESLIE WILLARD, )
 Plaintiff )
 vs. )
L. J. CHMELKA, JAMES ) STATEMENT OF COSTS
DORAN, IDA DORAN)
and NELLIE DORAN, )
 Defendants. )

| | |
|---|---:|
| Justice of Peace——fees—— | $ 6.50 |
| Telephone Call—— | 1.30 |
| Elmer Judy—helping move—— | 10.00 |
| To Dr. Morris—— | 2.00 |
| Constable—mileage—— | 41.40 |
| Constable—fees—— | 1.20 |
| | |
| Total—— | $62.40 |

 (Signed] A. R. Hillman,
 · Constable"

After receipt of this statement, plaintiff consulted an attorney, who, on April 11, 1946, wrote him a letter, sending a copy thereof to defendant, calling specific attention to the provisions of the statute with reference to the exaction of illegal fees by officers, the penalty therefor, and advising that the statement of costs contained fees in excess of those allowable under the statute. Thereafter and on April 18, 1946, defendant caused an execution to be issued in the unlawful detainer action, and on April 19, 1946, "levied" upon plaintiff's bank account in the Hereford State Bank under garnishment proceedings. A bank check for plaintiff's entire bank account, in the amount of $731.47, was mailed to the justice court in response to the writ of garnishment, and apparently defendant's costs were paid therefrom. In

connection with the garnishment proceedings and the service of the writ, defendant made the following return: "Served by reading to and leaving a copy with the within named L. J. Chmelka this 19th day of April, 1946, at the hour of 11 A. M. Service——Mileage $10.00."

Defendant testified that he used his own judgment with reference to the costs in the case, and his only guide as to the amount thereof was written instructions which he had received from a justice of the peace, by which he was advised that in the service of summons certain fees might be charged and that he was entitled to "a reasonable charge for each mile necessary to travel in connection with the case." He further testified that when he served the writ of restitution upon the Dorans he was told that they had no car with which to move their property from the premises, and that he made a trip to Pine Bluff, Wyoming, to ascertain the truth of this statement, for which his charges were $5.95; that in moving the household effects of the Dorans to the road, a distance of about 200 feet, he received a burn on a hot stove and paid a doctor's bill of $2.00 for the treatment thereof; and that in reaching the doctor's office at Pine Bluff, he incurred an additional expense of $5.95 as mileage. He also testified that he had used his own truck in moving the household effects to the public highway where, in inclement weather, he placed them along the public highway a distance of nearly half a mile, and for this service he charged $10.00 a day or $20.00; that he employed a sheepherder to help him in moving the household effects; that harvest hands were receiving $10.00 a day, and that he charged $10.00 for one day's services of the sheepherder; that it took him two days to do the moving of the household effects, for which he also was entitled to $10.00 a day, and that amounted to $20.00. He testified that when he received the writ of restitution he had occasion to call the justice of the peace by telephone, thereby incurring an expense of $1.30. His explanation as to many other charges for various other

services in connection with the writ of restitution is somewhat vague and indefinite.

At the conclusion of the evidence, the trial court found that the fees to which defendant was entitled in connection with the writ of restitution were:

| "On Mch. 21, 1946, | | Claimed | Allowed | Disallowed |
|---|---|---|---|---|
| Justice fees | | $ 6.50 | $ 6.50 | |
| Tel. call | | 1.30 | 1.30 | |
| Judy—helper | | 10.00 | 5.00 | $ 5.00 |
| Dr. Morris | | 2.00 | | 2.00 |
| Constable mileage | | | | |
| Mileage Pine Bluff | $5.65 | | | 5.65 |
| " another trip | 5.25 | | 5.25 | |
| Apparently mileage on same | | | | |
| Truck hire, 2 days | 20.00 | | 10.00 | 10.00 |
| Hillman labor | 10.00 | | 5.00 | 5.00 |
| Unaccounted for | .50 | | | |
| | $41.40 | 41.40 | | |
| Constable fee | | 1.20 | 1.20 | |
| | | $62.40 | $34.25 | $27.65 |
| On April 19, 1946, additional: | | | | |
| Constable fee and mileage | | 10.00 | 7.00 | 3.00 |
| | | $72.40 | $41.25 | $30.65 |

Excess fees demanded $30.65."

Judgment was entered in favor of plaintiff and against defendant for the sum of $91.95, being treble the amount which the court found to be illegal fees.

Defendant relies upon six specifications of points for a reversal, which specifications may be summarized: The court erred in holding that: (1) The disallowed demands were fees or compensation as provided by law within the inhibitions of section 186, supra; (2) defendant was not entitled to reimbursement for expenses necessarily incurred in the service of the writ of restitution; (3) the

demand was wilfully and knowingly made in violation of section 186, supra.

Plaintiff has filed cross specification of points which may be summarized: (1) There is no specific statutory allowance for expenses in unlawful detainer actions; (2) the court erred in allowing certain items in the aggregate sum of $21.30 and that judgment should be entered for $63.90 additional.

Defendant's specifications of points will be treated as one.

 It is well settled that the compensation of any public official for services rendered in his official capacity being regulated by statute, he is entitled only to demand and receive fees for those services concerning which compensation by law attaches, because it is an inflexible rule that an official can demand only such fees or compensation as the law has definitely fixed and authorized for the performance of his official duties. *City Bank of Leadville v. Tucker,* 7 Colo. 220, 3 Pac. 217; *Garfield County v. Leonard,* 26 Colo. 145, 57 Pac. 693; *Mitchell v. Wheeler,* 20 Colo. App. 159, 77 Pac. 361; *McGovern v. City and County of Denver,* 54 Colo. 411, 131 Pac. 273.

 Section 29, chapter 66, '35 C.S.A., fixes the allowable statutory fees for constables in the discharge of their official duties. There is no specific provision for services in connection with a writ of restitution, but, assuming that such services are in the same category as summons, a constable is entitled, in a county of the second class, to a fee of forty cents for serving and returning the same. By the same section he is entitled to a fee of seven and a half cents for each mile actually and necessarily traveled in serving the writ. Except in serving, levying and returning executions and writs of attachment on personal property, there is no provision under which a constable can demand or receive his actual expenses necessarily incurred in the discharge of his official duties. §29, supra. Under the provisions of said

section 29, defendant would be entitled to eighty cents for serving the writ of restitution on plaintiff and the Dorans. The Dorans lived ten and a half miles from defendant's residence, and in serving the writ of restitution, defendant would be entitled to mileage for twenty-one miles at seven and a half cents per mile, which would be $1.57. Defendant testified·that he served the writ of restitution on plaintiff. For this he would be entitled to an additional fee for service and return of forty cents, making a total of $2.37 properly due defendant in connection with his service of the writ. In the garnishment proceedings, defendant testified that he ˙traveled thirty miles in connection with the service upon the Hereford State Bank; his mileage would be $2.25 and for service and return of the writ forty cents. He also testified that he served "notice of levy" of attachment on plaintiff. Assuming that he was entitled to the statutory fee allowable for the service of summons, he would be entitled to forty cents and mileage of $1.20 for service thereof. Thus computed, the total statutory fees allowable to defendant would be $6.62.

In *Colorado Mortgage and Investment Co. v. Messemer,* 12 Colo. App. 361, 55 Pac. 611, the question involved was whether a constable was entitled to fees for serving a writ of restitution. Mileage in connection therewith was not an issue, but the question as to what expenses could be allowed in connection with such service was directly involved. It was contended by the constable that an agreement had been entered into between him and the agent of the owner of the property to remove certain buildings from the premises and that in doing so he incurred expenses in the sum of $89.25. In the justice of the peace court he recovered judgment in the sum of $84.50. On appeal to the county court, judgment was entered in favor of the constable for $70.00, and the case was then appealed to the court of appeals. The statute then in force fixing the amount of constables' fees and costs was then the same as the effective statute today.

It was contended that $6.00 was the limit of the constable's fees, but, inasmuch as the mortgage company tendered the officer $14.00 and kept its tender good, it was held that a verdict for that amount should have been directed, and, this not having been done, the judgment was reversed. In connection with the constable's fees, it was said: "The statute limits the sum total of a constable's fees, in any civil action, in counties of the first class, to $6.00, exclusive of commissions on moneys collected. Session Laws, 1891, p. 219. Arapahoe county, in which the judgment was recovered, and the writ was to be executed, was a county of the first class. Therefore, for plaintiff's services in the case as an officer, there being no money to collect, his fees could not exceed $6.00. But the service and execution of the writ of restitution did not require the removal or tearing down of buildings, and the performance of work of that kind was no part of the duty of the plaintiff as constable. Whatever he did beyond taking, and delivering to the company, the possession of the land, was done, not in an official, but in a private, capacity, and to enable him to recover for the work, he must show an employment for the purpose." In that case the constable proved a contract for his services in removing the building in his private, not official, capacity, under which he was entitled to $8.00, and his fees in connection with the service and execution of the writ of restitution was limited to $6.00.

We have said that the question of the right of the constable to charge any fee whatever for service and return of a writ of restitution, and expenses incidental thereto, was not raised in the Colorado Mortgage and Investment Company case; however, the court of appeals stated therein: "We should say from the plaintiff's testimony, and the undisputed portions of the testimony given for the defendant, that the plaintiff was entitled to judgment for the $8.00 *together with his legal fees for executing the writ, not exceeding $6.00.*" (Italics ours)

Under the provisions of section 29, supra, a constable's fees in a second-class county, of which Weld county is one, shall not exceed the sum of $7.00 in any civil action. In the instant case the constable's fees legally chargeable for his services in connection with the writ of restitution and garnishment totaled $6.62. According to defendant's testimony, he received a total of $49.60, or $42.98 in excess of the fees legally due him for his official services.

Defendant apparently places great reliance upon our decision in *City Bank of Leadville v. Tucker, supra,* wherein the questions involved related to the fees or costs properly chargeable by a sheriff in connection with an attachment arising out of an action in a court of record. The amounts there involved were $5.00 a day for a custodian, and the expenses of removing certain personal property and storing it until the termination of the suit. The two important questions were: Is the sheriff entitled to reimbursement for these expenses? and, Can they be recovered from the plaintiff? There was no promise of extra compensation, and the simple question was the right of the sheriff to his fees, pay for services rendered, and recovery of actual expenses incurred in the care and keeping of attached property while in his custody. Under the writ of attachment he was compelled to take and retain possession of the property and was responsible for its safekeeping. It was held that these necessary expenses should be allowed and taxed as *costs* in the suit if the amount thereof was approved by order of court. Under the statute then in force, no provision was made "for fees" allowable to the sheriff for actual expenses necessarily incurred, nor was there any provision for fees to the constable for expenses necessarily incurred. In 1891 (S. L. '91, p. 218, '35 C.S.A., c. 66, §29) the present fee statute for constables was enacted, and therein is found the following: "For serving, levying and returning execution or writ of attachment on personal property, besides actual expenses necessarily in-

curred, * * *." In 1921 (S. L. '21, '35 C.S.A., c. 66, §16), the present fee statute for sheriffs was enacted, and therein is found the following: "For levying execution, writ of attachment or replevin on personal property, besides actual expenses necessarily incurred * * *." These provisions, as we have said, limit expenses necessarily incurred by sheriffs in serving and returning executions, writs of attachment and writs of replevin on personal property, while the 1891 statute, supra, limits expenses necessarily incurred by constables in serving, levying and returning executions or writs of attachment on personal property. These are the only actions where provision is made for reimbursement for actual expenses necessarily incurred by these officials in the discharge of their duties in the service and return of civil process.

■ Defendant contends that the charges specified in his "Statement of Costs" are not a "fee or compensation" in the sense that those terms are used in section 186, chapter 48, supra. The act of 1891, supra, is entitled, "An act concerning fees, providing penalties for violation of this act, and to repeal all acts and parts of acts in conflict with the same." The legislature specified the "fee" for all services which a constable is authorized to perform in discharge of his official duties and enumerated among those "fees" is mileage and expenses necessarily incurred in connection with the service and return of certain writs. There is a further provision in the applicable statute which limits the total amount of the constable's fees in counties of the second class to the sum of $7.00. As we construe the statute, mileage is a fee, and the maximum allowance to constables includes mileage.

■ Defendant in his counterclaim alleged a contract with plaintiff by which the latter agreed to reimburse him for all costs and other expenses which he incurred in removing the Dorans from the premises. Defendant testified to such an agreement, but plaintiff and his wife denied any such contract. The court found in favor of

plaintiff on defendant's counterclaim and entered judgment accordingly. This finding and judgment, which are based upon conflicting evidence, will not be disturbed.

▪ ■ It is said that defendant should not be liable to judgment under the provision of section 186, supra, because, assuming that he demanded or received greater fees or compensation than is allowed or provided by law, he did not do so "wilfully and knowingly." A constable is charged with knowledge of the statutory fees for his official services, and ignorance thereof is no excuse; moreover, here, prior to the garnishment proceedings on the Hereford State Bank, defendant was placed on notice, being advised by letter from plaintiff's attorney that the amount set forth in his "Statement of Costs" was incorrect, and that under the provisions of section 186, supra, he would be liable in a civil action for three times the amount of the fees or compensation collected in excess of those specifically provided by statute. Notwithstanding this advice, he persisted in his demand, and the trial court found that in so doing he acted wilfully and knowingly. We concur in this finding.

■ Until March 1, 1946, when plaintiff's lease with Willard expired, the possession of the leased premises by the Dorans was, in fact, plaintiff's possession. Subsequent to the expiration of plaintiff's lease, the possession of the Dorans was separate and apart from any possession theretofore enjoyed by plaintiff. If the Dorans continued in possession of the premises, the unlawful detainer action should have been brought against them. The record shows that long prior to March 1, 1946, plaintiff and his wife had removed from the premises and claimed no right or title therein or possession thereof subsequent to March 1, 1946. Although the question is not here raised, the unlawful detainer action should have been brought against the Dorans alone; plaintiff was not concerned therewith, so far as the record here reveals. It is a general principle of law that since unlawful detainer actions are provided to recover possession of

premises which are unlawfully held, there can be no question of a doubt that such an action is not maintainable against a person not in possession at the time the action is instituted. This is true even though the detention was unlawful in its inception, but possession of the leased premises had been surrendered before the action was commenced. As we have said, plaintiff was not in possession, according to all of the evidence in the record, at the time the unlawful detention action was begun on March 11, 1946. Had plaintiff so requested, we would have been compelled to hold that he was not liable to defendant for any fees or compensation in connection with the writ of restitution and order a judgment for three times the amount of the fees paid to defendant here, but counsel concedes that under this irregular proceeding there are costs to which defendant is rightfully entitled.

We conclude that defendant, in the discharge of his official duties, is limited to such fees as are specifically provided by statute. If he rendered a service, for which no fee is provided, by dispossessing Dorans and placing their goods, as he says he did, along a public highway for a distance of half a mile in inclement weather, with the ground covered with snow, no allowance can be made to him therefor. If defendant was poorly compensated for these so-called official acts, he may take consolation in the fact that he was partially compensated therefor by the generosity of plainiff's counsel.

The cause is remanded to the trial court with instructions to enter judgment in favor of plaintiff and against defendant in the sum of $128.94. As so modified the judgment is affirmed.